# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION


DEAMBRE TABRICE HUCKABY,

       Petitioner,

                                    CASE NO. 2:09-CV-10030
  v.                           JUDGE MARIANNE O. BATTANI
                                     MAGISTRATE JUDGE PAUL J. KOMIVES

BLAINE C. LAFLER,

       Respondent.

_____/


# REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     D.    *Ineffective Assistance of Counsel (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          1.     *Evidentiary Hearing Testimony and the Presumption of Correctness* . . . . . . . . . . . . . . . 7
          2.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          3.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               a. Choice of Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               b. Denial of Right to Testify . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
               c. Failure to Request Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     E.    *Sufficiency of the Evidence (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
     F.    *Jury Instructions (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
               a. Intervening Cause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
               b. Lesser Offense Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
     G.    *Cumulative Error (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
     H.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
          1.     *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
     I.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.  The Court should also deny petitioner a certificate of appealability.

II.    REPORT:

A.    *Procedural History*

1.    Petitioner Deambre Tabrice Huckaby is a state prisoner, currently confined at the Carson City Correctional Facility in Carson City, Michigan.

2.    On July 28, 2005, petitioner was convicted of second degree murder, MICH. COMP. LAWS § 750.317; assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  On September 6, 2005, he was sentenced to a concurrent terms of 18-30 years' imprisonment on the murder conviction and 2-10 years' imprisonment on the assault conviction, as well as to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.    THERE WAS INSUFFICIENT EVIDENCE TO FIND APPELLANT GUILTY OF SECOND DEGREE MURDER WHERE DEATH RESULTED FROM THE INTERVENING CAUSE OF BLOOD CLOTS IN THE DECEDENT'S LUNGS, WHICH OCCURRED TWENTY DAYS AFTER HE WAS SHOT IN THE LEG.

II.    THE COURT ERRED REVERSIBLY IN FAILING TO INSTRUCT *SUA SPONTE* ON INVOLUNTARY MANSLAUGHTER, CAUSE OF DEATH AND INTERVENING CAUSE OF DEATH.

III.    DEFENSE COUNSEL WAS INEFFECTIVE IN FAILING TO REQUEST PROPER INSTRUCTIONS ON INTERVENING CAUSE AND INVOLUNTARY MANSLAUGHTER.

Petitioner also filed a motion to remand to the trial court for an evidentiary hearing on his ineffective assistance of counsel claim, which was granted by the court of appeals. Following the evidentiary hearing, petitioner filed a supplemental brief further elaborating on his ineffective assistance of counsel claim:

I.      DEFENDANT-APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

   A.      Standard of Review

   B.      Trial defense counsel was ineffective for raising a defense that he knew or should have known was completely untenable, given the facts disclosed during the course of pre-trial discovery.

   C.      Trial defense counsel was ineffective for prohibiting Defendant/Appellant from exercising his right to testify in his own defense at trial, and for failing to make any record of Defendant/Appellant's waiver of said right.

   D.      Trial defense counsel was ineffective for failing to discuss with his client, and failing to request jury instructions on, the necessarily lesser included offenses of Second Degree Murder as to Count I.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Huckaby*, No. 265200, 2007 WL 2377736 (Mich. Ct. App. Aug. 21, 2007) (per curiam).

       4.      Petitioner sought leave to appeal these three issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Huckaby*, 480 Mich. 1010, 743 N.W.2d 29 (2008).

       5.      Petitioner, through counsel, filed the instant application for a writ of habeas corpus on January 5, 2009. As grounds for the writ of habeas corpus, he raises the three claims that he raised in the state courts, as well as an additional claim that he was denied a fair trial by the cumulative

effect of the errors at his trial.[1]

6.      Respondent filed his answer on August 17, 2009. He contends that petitioner's jury instruction claim is procedurally defaulted, petitioner's cumulative error claim is unexhausted, and all of petitioner's claims are without merit.

7.      Petitioner filed a reply to respondent's answer on October 1, 2009.

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from the shooting of Cynthia and Ronnie Jessie at petitioner's home on January 3, 2005. Cynthia was not struck, but Ronnie was shot in the thigh. Although he was treated at the hospital for his wound, Ronnie Jessie died a few weeks later. The evidence adduced at trial was accurately summarized by the Michigan Court of Appeals:

> Defendant's convictions arise from a shooting at his Detroit home on January 3, 2005. Complainant Cynthia Jessie testified that defendant is her cousin and the decedent is her husband. On the day of the incident, the decedent attempted to contact defendant by phone numerous times because defendant owed the decedent money. At 11:45 p.m., the complainant and the decedent drove to defendant's house and the complainant repeatedly rang the doorbell and knocked on the door. The decedent was standing directly in front of the door and looking through a small window near the top of the door. The complainant heard four or five gunshots. The complainant "assume[ed]" defendant shot the decedent because the decedent indicated that defendant was coming to the door. The decedent was shot in the thigh and the complainant drove him to the hospital.
>
> According to medical personnel, the decedent arrived at the hospital in hemorrhagic shock, unable to breathe on this own, without a pulse and with a "through and through" gunshot wound in his left thigh. After the decedent was resuscitated, his wound was surgically repaired and he was released from the hospital. Approximately three weeks later, the decedent died from blood clots in his lungs. The assistant Wayne County medical examiner testified that blood clots within the posterior tibia vein, which is a lower portion of the femoral vein injured by the gunshot wound, dislodged, traveled through the circulation and blocked the blood flow to both lungs. She further testified that the "cause of death was a gunshot wound to the left leg, complicated by

---

[1]Although petitioner's first three claims are the same as the claims raised in the state courts, they are presented in a different order. Thus, Claim I is the ineffective assistance claim, Claim II is the sufficiency of the evidence claim, and Claim III is the jury instruction claim.

a pulmonary embolus."

Both the decedent's daughter and son testified that they maintained close family relations with defendant. The decedent's daughter testified that after the incident, defendant apologized and said that he did not know that the decedent was the person knocking on his door. The decedent's son testified that defendant told him that he was in the basement with company and heard banging on the door. He "thought someone was breaking in, so he got his assault rifle and he shot through the door." Defendant gave the decedent's son money for the decedent's funeral.

At trial, the defense counsel asserted that defendant was not the shooter, that the shooting did not occur on defendant's front porch, and that the decedent's cocaine use caused the blood clots that caused his death. Defendant did not testify. Trial counsel read into evidence a written statement that the decedent made to a police officer on January 7, 2005, in which the decedent denied knowing defendant or who lived at the address where he was shot. The decedent claimed that he was told to meet a person at a house to retrieve money, but he was not sure if he was at the right house. In rebuttal, the decedent's son testified that the decedent knew defendant, that he was with the decedent and defendant on several occasions, that they all shared a house at one point, that he had been with the decedent at defendant's house, and that the decedent did not want the police to know that defendant was the shooter.

*People v. Huckaby*, 2007 WL 2377736, at *1, slip op. at 1-2 (footnote omitted).

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Ineffective Assistance of Counsel (Claim I)*

Petitioner first contends that his trial counsel rendered constitutionally ineffective assistance at trial. Specifically, petitioner contends that counsel was ineffective for: (1) raising a defense that was untenable in light of the facts of the case; (2) preventing petitioner from exercising his right to testify and failing to make a record of petitioner's waiver; (3) failing to discuss with petitioner, and request, jury instructions on the lesser offenses of voluntary and involuntary manslaughter; and (4) failing to request an instruction on intervening cause of death. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Evidentiary Hearing Testimony and the Presumption of Correctness*

As noted above, following his conviction petitioner filed a motion for new trial in the trial court asserting his ineffective assistance of counsel claims, and the court of appeals remanded the matter to the trial court to conduct an evidentiary hearing on the motion. Again, the Michigan Court of Appeals accurately summarized the testimony at the evidentiary hearing:

At [the evidentiary] hearing, both defendant and trial counsel testified that defendant had retained trial counsel to represent him in three previous matters, and in each case defendant pleaded guilty to lesser offenses and was pleased with trial counsel's representation. Trial counsel testified that, in this case, he had "many meetings" and discussions with defendant and defendant's wife regarding the charges, defendant's prior record, possible defenses, and whether defendant would testify. In discussing the defense strategy, trial counsel indicated that because defendant was a third or fourth habitual offender, defendant could be charged for simply discharging a weapon and that defendant wanted to "beat the charge" and "not return to prison." Trial counsel testified that after discussions, they chose to argue that the prosecution could not establish beyond a reasonable doubt that defendant was the person who discharged the weapon, and that the decedent's own drug use caused his death. With regard to the decedent's children's testimony, trial counsel planned to argue bias and impeach their testimony. Trial counsel testified that defendant agreed with the defense strategy and never expressed any disagreement. Trial counsel further testified that the defense of accident was inapplicable because defendant intended to discharge the weapon through the door.

Defendant testified that he advised trial counsel that he had an earlier "road rage" incident and thought that the driver was breaking into his home. After hearing banging and giggling at the front door and window, he shot through the lower portion of the door two or three times to scare the possible intruder. Defendant acknowledged that he and trial counsel discussed the defenses of mistaken identity and cause of death. He claimed that he disagreed with those defenses and wanted to admit the shooting and argue that it was a mistake, but trial counsel discouraged him by indicating that he would probably be imprisoned for life if he admitted the shooting. Defendant testified that he eventually deferred to counsel's judgment.

*Huckaby*, 2007 WL 2377736, at *4, slip op. at 4-5 (footnote omitted).

At the conclusion of the hearing, the trial judge denied petitioner's motion for new trial. With respect to the choice of defense claim, the court found that a defense of accident would not have been viable, and that counsel's choice of defense was a reasonable strategic decision. *See* Mot. Hr'g Tr., dated 10/12/06, at 93-95. With respect to the right to testify claim, the court noted the conflicting testimony of counsel and petitioner regarding the issue, but found "trial counsel's testimony to be more credible." *Id*. at 96. Because counsel testified that he had discussed the issue with petitioner and petitioner had agreed with the decision not to testify, the court concluded that petitioner was not entitled to a new trial based on this claim. *See id*. at 95-96. With respect to the lesser offense issue,

again finding counsel credible the court noted that petitioner was not interested in pursuing a lesser offense strategy, instead desiring to pursue only a complete acquittal. The court also concluded that the evidence would not have supported an involuntary manslaughter instruction. *See id.* at 96-97. The trial court subsequently entered a written order reflecting these findings, which again explicitly found counsel's testimony at the hearing more credible than petitioner's testimony. *See People v. Huckaby*, No. 05-003213-01 (Wayne County, Mich., Cir. Ct. Oct. 13, 2006).

The trial court's factual findings, and in particular its credibility finding, are entitled to a presumption of correctness here. The habeas statute provides that, in a habeas case, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007) ("[I]n the context of a *Strickland* evidentiary hearing, it is for the judge to evaluate the credibility of the criminal defendant and the former defense counsel in deciding what advice counsel had in fact given to the defendant during his trial, and such findings are entitled to the Section 2254(e)(1) presumption."). The Court must be particularly deferential with respect to the state court's credibility determinations, which "are virtually unreviewable by the federal courts." *Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) (internal quotation omitted); *see also*, *LaTorres v. Walker*, 216 F. Supp. 2d 157, 167 (S.D.N.Y. 2000); *cf. Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. 2254(d) [the predecessor to § 2254(e)(1)] gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). "'Clear and convincing evidence' within the meaning of § 2254(e) 'requires greater proof than preponderance of the evidence' and must produce 'an abiding conviction' that the factual contentions being advanced are 'highly probable.' *Cooper v. Brown*, 510 F.3d 870, 919 (9th Cir. 2007) (quoting *Sophanthavong v.*

*Palmateer*, 378 F.3d 859, 866 (9th Cir.2004)); *cf. Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).[2]

Here, petitioner contends that the presumption of correctness should not apply to the trial court's credibility findings because the record shows that petitioner's trial counsel did not tell the truth during the evidentiary hearing. In support of this contention, petitioner points to counsel's testimony that he had "a vivid memory, when we came time for lesser included instructions, I remember going back – back into this courtroom, in the back, and saying to Mr. Huckaby, we've had previous discussions, are you sure you want to proceed." Mot. Hr'g Tr., dated 10/12/06, at 23-24. Petitioner characterizes this testimony as counsel asserting that "he remembered speaking with his client in the lock up behind the courtroom during trial," Pet'r's Reply, at 2, and that this testimony was false because petitioner was out on bond and was not in custody at the time of trial. At the outset, it is not clear that counsel's testimony was incorrect. Although appellate counsel at the evidentiary hearing and petitioner's counsel here characterize trial counsel's testimony as referring to a visitation in the lock-up area, that is not what counsel said. On the contrary, the words actually used by trial counsel

---

[2]There is some dispute as to whether the § 2254(e)(1) presumption applies where a federal habeas court is considering only the evidence adduced in the state courts. Some courts have held that § 2254(e)(1) applies to all factual determinations, while others have held that § 2254(e)(1) applies only when a federal court develops new facts in an evidentiary hearing, leaving § 2244(d)(2)'s reasonableness determination as the sole means for evaluating state court factual findings where no additional evidence is adduced in the federal court. *See Wood v. Allen*, 130 S. Ct. 841, 848 n.1 (2010) (discussing split of authority). The Court granted *certiorari* on this issue in *Wood*, but ultimately declined to resolve it. *See id.* at 849. Although the Sixth Circuit has not explicitly decided this issue, it has repeatedly stated that, in making a reasonableness determination under § 2254(d)(2), a federal court must afford state court factual findings a presumption of correctness under § 2254(e)(1), and has done so in cases not involving any federal court evidentiary hearing. *See, e.g., Harris v. Haeberlin*, 526 F.3d 903, 910 (6th Cir. 2008); *Dixon v. Jamrog*, 121 Fed. Appx. 93, 94 (6th Cir. 2005); *Finley v. Rogers*, 116 Fed. Appx. 630, 632 (6th Cir. 2004); *Dennis v. Mitchell*, 354 F.3d 511, 518 (6th Cir. 2003). Thus, the Sixth Circuit approach is in accord with those courts that hold § 2254(e)(1) applicable to all state court factual findings, regardless of whether the federal court conducts an evidentiary hearing.

suggest that he met with petitioner in the back of the courtroom itself. Perhaps a gesture or something else at the evidentiary hearing led appellate counsel to conclude that trial counsel was referring to the lock-up area, but that does not appear on the record, and appellate counsel did not further explore this matter with trial counsel at the evidentiary hearing to clarify to what counsel was referring by speaking of the "back" of the courtroom. Even if petitioner's characterization of trial counsel's testimony is plausible, it does not constitute clear and convincing evidence which shows that it is "highly probable" that counsel lied in his testimony.

In any event, even if counsel was asserting that he met with petitioner in the lock-up area, and such an assertion was incorrect, this alone does not constitute clear and convincing evidence that counsel lied in his testimony or that petitioner's testimony was more credible than trial counsel's testimony. Counsel testified extensively to numerous conversations he had with petitioner, in which a number of defense strategies were discussed, including the defense to present and whether petitioner would testify. Counsel's allegedly incorrect testimony as to the location of one of these conversations does not establish that the bulk of his testimony was not credible, only that he was mistaken on this one point. And despite the fact that appellate counsel argued this matter as a reason for discounting trial counsel's credibility, the trial court nevertheless found trial counsel to have been credible. *See Valle v. Crosby*, No. 03-20387CIV, 2005 WL 3273754, at *6 (S.D. Fla. Sept. 13, 2005) (presumption of correctness not rebutted where "[t]he only evidence to which Petitioner now refers to dispute the trial court's findings, however, is evidence already considered and rejected by the trial court."). As the Supreme Court has explained in another context, "[w]hen . . . the issue involves the credibility of witnesses and therefore turns largely on an evaluation of demeanor, there are compelling and familiar justifications for . . . according [the trial court's] determinations presumptive weight." *Miller v. Fenton*, 474 U.S. 104, 114 (1985). One ambiguous statement by trial counsel, that may or may not

have been correct, does not constitute "clear and convincing evidence" under § 2254(e)(1) that the trial court's general credibility determination was erroneous. Thus, the Court should reject petitioner's argument and conclude that, in evaluating petitioner's ineffective assistance claims, the trial court's factual findings are entitled to a presumption of correctness.

2. *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether

12

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

3.       *Analysis*

a.  *Choice of Defense*

Petitioner first contends that counsel was ineffective for presenting a mistaken identification defense, rather than a defense of accident or pursuit of a lesser offense conviction. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Decisions about what defenses to pursue or not pursue are "[a]mong the 'virtually unchallengeable' tactical decision left to the judgment of trial counsel." *Gluzman v. United States*, 124 F. Supp. 2d 171, 174 (S.D.N.Y. 2000).      As a review of the trial testimony demonstrates, counsel faced a daunting task in representing petitioner. Keeping in mind the United States Supreme Court's admonition that, "[t]o counteract the natural tendency to fault an unsuccessful defense, a court reviewing an ineffective assistance of counsel claim must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" *Nix v. Whiteside*, 475 U.S. 157, 165 (1986) (quoting *Strickland*, 466 U.S. at 689); *see also*, *Griffin v. McVicar*, 84 F.3d 880, 888 (7th Cir. 1996) ("[T]he mere fact that a defendant chooses one of two available defenses cannot establish ineffective assistance of counsel, even if the defendant makes a bad choice."). "Simply because counsel was unsuccessful does not make him ineffective for Sixth Amendment purposes." *Mayes v. United States*, 93 F. Supp. 2d 882, 891 (E.D. Tenn. 2000).

It may be that, as petitioner argues, the mistaken identification defense advanced by counsel was untenable, but it was not wholly inapt. While a number of witnesses indirectly identified petitioner as the shooter, either testifying that he was at home and thus could have been the shooter or that petitioner had admitted to them that he was the shooter, no witness could directly identify

petitioner as the shooter. Counsel's strategy to was to attack the credibility of these witness through cross-examination. This strategy was not unreasonable, for two reasons. First, as counsel testified at the evidentiary hearing, petitioner was adamant that he wanted an acquittal, and was not interested in pursuing any defense that would still have resulted in imprisonment, such as pursuit of a lesser offense strategy would have. As noted above, the trial court found counsel credible, and this determination is binding here. And as explained in *Strickland*, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691.

Second, in assessing the reasonableness of counsel's choice of what defense to pursue, it is not enough to look at the likelihood of success of the defense chosen; a reviewing court must also consider the viability of the defenses which counsel chose not to pursue. With respect to an accident defense, the Michigan courts have explained that "homicide is excusable if the death is the result of an accident and the actor is not criminally negligent." *People v. Hess*, 214 Mich. App. 33, 38, 543 N.W.2d 332, 335 (1995) (internal quotation omitted). Petitioner, however, does not contend that he accidentally fired the gun, or that it discharged on its own. Rather, he concedes that he purposefully fired the gun. The only "accident" identified by petitioner is his mistake as to the identity of the person on the porch. However, assuming that petitioner had the mental state necessary for murder at the time he fired the gun–an issue discussed below in connection with petitioner's sufficiency of the evidence claim–petitioner's mistake as to the identity of the victim does not absolve him of criminal liability. "The principle of 'transferred intent' makes an actor criminally responsible for the results of his conduct, even thought the person injured is not his intended victim." *State ex rel S.B.*, 755 A.2d 596, 599 (N.J. Super. Ct. App. Div. 2000); *accord* 1 LAFAVE & SCOTT, SUBSTANTIVE CRIMINAL LAW § 6.4(d) (2d ed.). Michigan courts apply the common law doctrine of transferred

intent.  *See People v. Lawton*, 196 Mich. App. 341, 350-51, 492 N.W.2d 810, 815 (1992); *People v. Youngblood*, 165 Mich. App. 381, 388, 418 N.W.2d 472, 475 (1988).  As explained by the Michigan Court of Appeals in a case involving a charge of assault with intent to commit great bodily harm, "[b]efore defendant can be convicted it must first be shown that he had the intention to cause great bodily harm to someone.  Merely because he shot the wrong person makes his crime no less heinous. It is only necessary that the state of mind exist, not that it be directed at a particular person." *People v. Lovett*, 90 Mich. App. 169, 172, 283 N.W.2d 357, 359 (1979).  Because petitioner does not contend that the firing of the gun was accidental, only that he was mistaken as to the identity of the victim, there was no viable accident defense for counsel to pursue.

Nor would a defense directed at petitioner's mental state have been successful.  At the state court evidentiary hearing, petitioner testified that he was only shooting to attempt to scare away whoever was on the porch.  As explained more fully below, to establish petitioner's guilt of second degree murder, the prosecution was required to show one of three mental states:  (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result.  *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W.2d 304, 319-20 (1980).  Petitioner did not testify at the evidentiary hearing that he fired the gun in a direction other than the victim, or that he provided any other sort of warning, and nothing the record supports that he did so.  Rather, even under petitioner's version of events he deliberately fired his gun at a door, on the other side of which he knew a person was standing.  While petitioner's testimony that he only intended to scare away the person on the porch, if believed, might have negated a finding that he intended to kill or commit great bodily harm, it would not have negated a finding that he intended to create a very high risk of death or great bodily harm.  It is well established that malice

15

may be inferred from evidence that establishes "the intent to do an act that is in obvious disregard of life-endangering consequences." *People v. Aldrich*, 246 Mich. App. 101, 123, 631 N.W.2d 67, 80 (2001) (internal quotations omitted). Firing a gun at a door behind which another is known to be standing, even if done for the purpose of frightening that person, constitutes an "act that is in obvious disregard of life-endangering consequences." *See People v. Fields*, No. 266738, 2007 WL 1712619, at *1 (Mich. Ct. App. June 14, 2007) ("Shooting a gun at a person at such close range clearly indicates an obvious disregard of life-endangering consequences."); *People v. Williams*, No. 232827, 2004 WL 2124705, at *5 (Mich. Ct. App. Sept. 23, 2004) ("Here, defendant concedes that there was evidence that he fired at a door. Also, there was evidence that someone had just come to answer the door, that defendant knew that someone had done so, and, in fact, defendant had yelled for the person to get back before firing the shot at the door. Because the natural tendency of firing a gun at a door behind which someone is standing is to cause death or great bodily harm, there was evidence from which a rational factfinder could find beyond a reasonable doubt that defendant acted with malice.").

And for the reasons explained in connection with petitioner's sufficiency of the evidence and jury instruction claims, *infra*, petitioner had no viable defense based on intervening cause or manslaughter. Accordingly, the Court should conclude that counsel was not ineffective in choosing to pursue a defense of mistaken identity, and that petitioner is not entitled to habeas relief on this claim.

### b. Denial of Right to Testify

Petitioner next contends that counsel was ineffective for denying him his right to testify on his own behalf. To the extent petitioner contends counsel prevented him from testifying, this argument is without merit. As explained above counsel, whose testimony was found credible by the trial court, testified at the evidentiary hearing that he and petitioner discussed the matter, and came

to a mutual decision that petitioner would not testify. Further, the record does not reveal that

petitioner at any time made known his desire to testify. As the Sixth Circuit recently explained:

> Indeed, "[b]arring any statements or actions from the defendant indicating
> disagreement with counsel or the desire to testify, the trial court is neither required to
> sua sponte address a silent defendant and inquire whether the defendant knowingly
> and intentionally waived the right to testify, nor ensure that the defendant has waived
> the right on the record." To the contrary:
>> A defendant who wants to testify can reject defense counsel's advice
>> to the contrary by insisting on testifying, communicating with the trial
>> court, or discharging counsel. At base, a defendant must alert the trial
>> court that he desires to testify or that there is a disagreement with
>> defense counsel regarding whether he should take the stand. When a
>> defendant does not alert the trial court of a disagreement, waiver of the
>> right to testify may be inferred from the defendant's conduct. Waiver
>> is presumed from the defendant's failure to testify or notify the trial
>> court of the desire to do so.

*Hodge v. Haeberlin*, 579 F.3d 627, 639-40 (6th Cir. 2009) (citations omitted) (quoting *United States*

*v. Weber*, 208 F.3d 545, 551 (6th Cir. 2000)).

Further, petitioner cannot show that counsel's advice that petitioner should not testify was

deficient, or that he was prejudiced by counsel's failure to call him as a witness. *See Hodge*, 579 F.3d

at 640 (applying *Strickland* prejudice prong to claim that counsel failed to allow petitioner to testify);

*United States v. Tavares*, 100 F.3d 995, 998 (D.C. Cir. 1996) (declining to establish rule of *per se*

prejudice in claims involving counsel's interference with right to testify). Petitioner's claim is tied

to his accident defense, but as explained above that defense was not viable because petitioner would

not have testified that the gun accidentally discharged, only that he thought someone else was on the

porch. For these reasons, petitioner cannot show that counsel prevented him from testifying on his

own behalf, or that if counsel did so he was prejudiced by counsel's actions.

Nor can petitioner show that counsel was ineffective for failing to ensure that he explicitly

waived his right to testify on the record, because there is no requirement for an on the record waiver.

When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *See Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000). A trial court has no duty to inquire *sua sponte* whether a defendant knowingly, voluntarily, or intelligently waives his or her right to testify. *See United States v. Webber*, 208 F. 3d 545, 551-52 (6th Cir. 2000). In addition, a state trial judge is not constitutionally required to specifically address a criminal defendant and both explain that he has a right to testify and ask him whether he wishes to waive that right. *See Siciliano v. Vose*, 834 F. 2d 29, 30 (1st Cir. 1987); *see also Liegakos v. Cooke,* 106 F. 3d 1381, 1386 (7th Cir. 1997). Waiver of the right to testify may be inferred from a defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *See Webber,* 208 F. 3d at 551. Here, petitioner did not alert the trial court at the time of trial that he wanted to testify. Because the record is void of any indication by petitioner that he disagreed with counsel's advice that he should not testify, petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that her counsel rendered ineffective assistance of counsel. *Gonzales,* 233 F. 3d at 357. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Failure to Request Instructions

Finally, petitioner contends that counsel was ineffective for failing to request instructions on the lesser offenses to second degree murder, specifically on voluntary and involuntary manslaughter. At the outset, this claim is without merit because counsel testified that he and petitioner did discuss lesser offenses, but that petitioner was adamant that he was uninterested in pursuing any defense which would result in a conviction and imprisonment. In any event, petitioner cannot show that counsel was ineffective, because he was not entitled to the instructions as a matter of state law, as explained more fully below in connection with petitioner's substantive jury instruction claims.

Accordingly, the Court should conclude that petitioner is not entitled to relief on this claim.

E.      *Sufficiency of the Evidence (Claim II)*

Petitioner next contends that the prosecution presented insufficient evidence to prove his guilt beyond a reasonable doubt. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense

raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Under Michigan law, the common law crime of murder is defined as second degree murder, and is punishable by up to life imprisonment. *See* MICH. COMP. LAWS § 750.317. To establish second degree murder, the prosecution must show that the defendant killed a human being with malice aforethought. In order to show malice aforethought, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W.2d 304, 319-20 (1980). As explained above, direct evidence of malice is not necessary; rather, malice may be inferred from evidence that establishes "the intent to do an act that is in obvious disregard of life-endangering consequences." *People v. Aldrich*, 246 Mich. App. 101, 123, 631 N.W.2d 67, 80 (2001) (internal quotations omitted).

2.      *Analysis*

Although petitioner contends, in connection with his ineffective assistance of counsel claim, that the shooting was accidental and was not done with the requisite mental state, he does not contend that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he acted with malice. And, as explained above, petitioner's act of firing a gun into a door behind which he

knew another person to be standing was sufficient to show that he acted in obvious disregard of the life endangering consequences of his actions. *See People v. Fields*, No. 266738, 2007 WL 1712619, at \*1 (Mich. Ct. App. June 14, 2007) ("Shooting a gun at a person at such close range clearly indicates an obvious disregard of life-endangering consequences."); *People v. Williams*, No. 232827, 2004 WL 2124705, at \*5 (Mich. Ct. App. Sept. 23, 2004) ("Here, defendant concedes that there was evidence that he fired at a door. Also, there was evidence that someone had just come to answer the door, that defendant knew that someone had done so, and, in fact, defendant had yelled for the person to get back before firing the shot at the door. Because the natural tendency of firing a gun at a door behind which someone is standing is to cause death or great bodily harm, there was evidence from which a rational factfinder could find beyond a reasonable doubt that defendant acted with malice.").

Rather, petitioner contends that the evidence was insufficient to establish that he caused the victim's death. He notes that the victim "was revived in the hospital, the wound was surgically repaired, he was released home with his daughter, and resumed a normal, active lifestyle thereafter." He also argues that "[t]here was ample evidence in the medical autopsy records, both through the blood toxicology screen as well as the notations of numerous needle marks on the skin of his legs, that Mr. Jessie was a habitual cocaine user, and that he had used within four (4) hours of his death." Pet'r's Br., at 32-33. Petitioner argues, therefore, both that there was insufficient evidence that he caused the death, or that the death was not the result of an intervening cause, namely, the victim's drug use. The Court should reject this argument.

The Michigan Supreme Court has elucidated the causation element in criminal law as a general matter, explaining:

> In criminal jurisprudence, the causation element of an offense is generally comprised of two components: factual cause and proximate cause. The concept of factual causation is relatively straightforward. In determining whether a defendant's

conduct is a factual cause of the result, one must ask, "but for" the defendant's conduct, would the result have occurred? If the result would not have occurred absent the defendant's conduct, then factual causation exists.

The existence of factual causation alone, however, will not support the imposition of criminal liability. Proximate causation must also be established. As we noted in Tims, proximate causation is a "legal colloquialism." It is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural. Thus, a proximate cause is simply a factual cause "of which the law will take cognizance."

For a defendant's conduct to be regarded as a proximate cause, the victim's injury must be a "direct and natural result" of the defendant's actions. In making this determination, it is necessary to examine whether there was an intervening cause that superseded the defendant's conduct such that the causal link between the defendant's conduct and the victim's injury was broken. If an intervening cause did indeed supersede the defendant's act as a legally significant causal factor, then the defendant's conduct will not be deemed a proximate cause of the victim's injury.

*People v. Schaefer*, 473 Mich. 418, 435-37, 703 N.W.2d 774, 785 (2005), *overruled in part on other grounds by People v. Derror*, 475 Mich. 316, 334, 715 N.W.2d 822, 832 (2006).

Here, there was more than sufficient evidence presented to establish both factual and proximate causation. With respect to factual causation, "[t]he medical examiner, who was qualified as an expert in forensic pathology, concluded that the 'cause of death was a gunshot wound to the left leg, complicated by a pulmonary embolus.'" *Huckaby*, 2007 WL 2377736, at *2, slip op. at 3; *see also*, Trial Tr., Vol. I, at 275, 280, 300, 318 (testimony of medical examiner Dr. Leigh Hlavet). Further, with respect to proximate causation both the medical examiner and the doctor who treated the victim at the time of his death testified that there was no connection between cocaine use and either the formation or dislodging of blood clots. *See Huckaby*, 2007 WL 2377736, at *3, slip op. at 3; Trial Tr., Vol. I, at 288, 322-23, 326; Vol. II, at 45-46 (testimony of Dr. Ayodelle Sangosanya). This testimony, if accepted by the jury, was sufficient to establish that the gunshot was the "but for" cause of the victim's death, and that there was no intervening cause which would have removed the gunshot as the proximate cause of the victim's death. Therefore, the Michigan Court of Appeals's

rejection of petitioner's claim was reasonable and petitioner is not entitled to habeas relief.

Petitioner also asserts that the evidence was insufficient to establish that he fired the shots. This argument is without merit. First, there was circumstantial evidence to support petitioner's identity, as the shots come from inside the house in which petitioner and his wife were located. Second, there was direct evidence presented that petitioner had shot the victim. The victim's son and daughter both testified that petitioner apologized to them for shooting the victim, explaining that he did not know that it was their father on the other side of the door. *See* Trial Tr., Vol. I, at 210-12, 222-23, 226. They both also testified that petitioner gave the family money to help pay for the funeral. *See id*. at 213, 227. From this evidence, a rational trier of fact could conclude beyond a reasonable doubt that petitioner fired the shots. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his sufficiency of the evidence claim.

F.      *Jury Instructions (Claim III)*

Petitioner next contends that he was denied a fair trial by the trial court's failure to give several jury instructions. Specifically, he contends that the court erred in failing to *sua sponte* instruct the jury on intervening cause and the lesser offenses of voluntary and involuntary manslaughter. The Court should conclude that petitioner is not entitled to habeas relief on these claims.[3]

1.      *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize

---

[3]Respondent contends that petitioner's instructional error claims are procedurally defaulted because petitioner did not request the instructions at trial and counsel expressed satisfaction with the court's instructions, a fact upon which the court of appeals relied in declining to review the merits of these claims. *See Huckaby*, 2007 WL 2377736, at *3, slip op. at 4. However, it is necessary to consider the merits of these claims to resolve petitioner's ineffective assistance of counsel claims, which are asserted as both independent bases for relief and as cause to excuse petitioner's procedural default.

that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle*, 502 U.S. at 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

2.      *Analysis*

*a. Intervening Cause*

Petitioner first contends that the trial court erred in failing *sua sponte* to instruct the jury on intervening cause. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner cannot show that the absence of an intervening cause instruction deprived him of

a fair trial, because there was no evidence on which the jury could have found an intervening cause sufficient to sever petitioner's criminal liability. As noted above, where a separate cause intervenes between the defendant's action and the victim's death, this intervening cause will negate the required showing of proximate cause. As the Michigan Supreme Court has explained, "[w]here an independent act intervenes between the act of a criminal defendant and the harm to a victim, that act may only serve to cut off the defendant's criminal liability where the intervening act is the sole cause of harm." *People v. Bailey*, 451 Mich. 657, 677, 549 N.W.2d 325, 334 (1996). There was, it is true, evidence presented that the victim had engaged in cocaine use between the time of the shooting and his death 20 days later. What was wholly absent, however, was any evidence that this cocaine use in any way contributed to the victim's death. The two medical witnesses testified that there was no correlation between the victim's cocaine use and the blood clot which developed, and the medical examiner testified that the clot resulted from the gunshot. Thus, petitioner cannot show that he was entitled to an intervening cause instruction. *See People v. Abby*, No. 262365, 2007 WL 602562, at *4 (Mich. Ct. App. Feb. 27, 2007); *cf. Bailey*, 451 Mich. at 674-75, 549 N.W.2d at 333.

Further, petitioner cannot show that he was prejudiced by the absence of an explicit intervening cause instruction, because the court's instructions and defense counsel's arguments adequately presented the issue to the jury. Defense counsel argued extensively that the victim's death was caused not by the gunshot, but by his cocaine use. *See* Trial Tr., Vol. II, at 134-41. And although the trial court did not specifically instruct the jury on intervening cause, it did instruct that the prosecution was required to prove beyond a reasonable doubt that petitioner "caused the death of Mr. Ronnie Jessie Sr., that is that Mr. Jessie died as a result of a gunshot wound." *Id*. at 159. This instruction on causation, coupled with counsel's extensive argument on the causation issue, adequately presented petitioner's theory of the case to the jury, and had the jury accepted petitioner's

theory that the victim's cocaine use caused his death, it would have had to acquit petitioner under the court's causation instruction. *See Rodriguez v. Young*, 906 F.2d 1153, 1166 (7th Cir. 1990) (habeas relief not warranted where "the instructions finally given to the jury adequately addressed the [petitioner's] theory in a general way, even if not as specifically as [he] would have liked," and the instructions, "considered together, and along with counsel's argument and cross examination . . . should have reasonablely conveyed to the jury [petitioner's] theory of the case."). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. *Lesser Offense Instructions*

Petitioner also contends that he was denied a fair trial by the trial court's failure *sua sponte* to instruct on the lesser included offenses of voluntary and involuntary manslaughter. The Court should conclude that petitioner is not entitled to habeas relief on this claim, for two reasons.

First, this claim does not present a cognizable basis for habeas review. Although the Eighth Amendment and the Due Process Clause require that a trial court instruct the jury on lesser included offenses in the context of a capital case, *see Beck v. Alabama*, 447 U.S. 625, 637-38 (1980) (trial court required to instruct *sua sponte* on lesser included offenses where the failure to do so would result in the jury being given an "all or nothing" choice of convicting on the capital charge or acquitting the defendant), "the Constitution does not requires a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). As the Sixth Circuit has noted, even where a lesser offense instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); *see also*, *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002). At a minimum, there is no clearly established Supreme Court law which requires the giving of a requested lesser offense

instruction in the non-capital context, as is required for habeas relief under § 2254(d)(1). *See Samu v. Elo*, 14 Fed. Appx. 477, 479 (6th Cir. 2001); *Kuroda v. Bell*, No. 2:07-CV-12310, 2007 WL 1657410, at *2 (E.D. Mich. June 7, 2007) (Cohn, J.); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (Tarnow, J.).

Second, even if otherwise cognizable, petitioner's claim is without merit because he was not entitled to manslaughter instructions as a matter of state law. At the outset, petitioner's suggestion that he was automatically entitled to manslaughter instructions because voluntary and involuntary manslaughter are necessarily lesser included offenses of second degree murder is without merit. In *People v. Cornell*, 466 Mich. 335, 646 N.W.2d 127 (2002), upon which petitioner relies, the Michigan Supreme Court held that the statute governing lesser offenses, MICH. COMP. LAWS § 768.32(1), does not permit a court to instruct the jury on an uncharged cognate offense. *See Cornell*, 466 Mich. at 359, 646 N.W.2d at 140. Contrary to petitioner's argument, however, the *Cornell* court did not hold that a defendant is entitled to necessarily included offense instructions in all cases. Rather, the court held that a defendant is entitled to a lesser offense instruction where both the lesser offense is a necessarily included one and "a rational view of the evidence would support it." *Id.* at 357, 646 N.W.2d at 139. In reaching this conclusion, the court explicitly overruled its prior decision in *People v. Jenkins*, 395 Mich. 440, 236 N.W.2d 503 (1975). In that case, the court had held that where first degree murder is charged, the court must *sua sponte*, and even over a defendant's objection, instruct the jury on the lesser included offense of second degree murder. *Id.* at 442, 236 N.W.2d at 504. Overruling *Jenkins*, the *Cornell* court explained that "[i]n light of our holding that a requested instruction on a necessarily included offense must be supported by the evidence, an instruction on second-degree murder, as a necessarily included lesser included offense of first-degree murder, is not automatically required. Rather, such an instruction will be proper if the intent element differentiating

the two offenses is disputed and the evidence would support a conviction of second-degree murder." *Cornell*, 466 Mich. at 358 n.13, 646 N.W.2d at 140 n.13. And in *People v. Mendoza*, 468 Mich. 527, 664 N.W.2d 685 (2003), the court held that both voluntary and involuntary manslaughter are necessarily included offenses of murder, *see id*. at 540-41, 664 N.W.2d at 692-93, but also made clear that this fact alone does not entitled a defendant to instructions on these offenses. Rather, the court explained, "when a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given *if supported by a rational view of the evidence*." *Id*. at 541, 664 N.W.2d at 693 (emphasis added); *see also, id*. at 545-48, 664 N.W.2d at 694-96 (finding that involuntary manslaughter instruction was not warranted under facts of that case). Thus, the question is not whether voluntary and involuntary manslaughter are necessarily included offenses of second degree murder; *Mendoza* establishes that they are. The question, rather, is whether a rational view of the evidence would have supported a finding that petitioner committed either voluntary or involuntary manslaughter. The Court should conclude that neither verdict could have been reached on a rational view of the evidence.

Under Michigan law voluntary "[m]anslaughter is murder without malice." *Mendoza*, 468 Mich. at 534, 664 N.W.2d at 689. "Murder and manslaughter are both homicides and share the element of being intentional killings. However, the element of provocation . . . characterizes the offense of manslaughter [and] separates it from murder." *People v. Pouncey*, 437 Mich. 382, 388, 471 N.W.2d 346, 350 (1991). Thus, "[u]nder Michigan law, 'voluntary manslaughter is an intentional killing committed under the influence of passion or hot blood produced by adequate provocation, and before a reasonable time has passed for the blood to cool and reason to resume its habitual control.'" *Todd v. Stegal*, 40 Fed. Appx. 25, 29 (6th Cir. 2002) (quoting *People v. Fortson*, 202 Mich. App. 13, 19, 507 N.W.2d 763, 767 (1993)). In other words, "to show voluntary manslaughter, one must show

that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Mendoza*, 468 Mich. at 535-36, 664 N.W.2d at 690.  Not every form of provocation, however, will suffice to negate the malice necessary for murder.  As the Michigan Supreme Court has explained,

> [t]he provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason. . . .
> In addition, the provocation must be adequate, namely, that which would cause the reasonable person to lose control.  Not every hot-tempered individual who flies into a rage at the slightest insult can claim manslaughter.  The law cannot countenance the loss of self-control; rather, it must encourage people to control their passions.

*Pouncey*, 437 Mich. at 389, 471 N.W.2d at 350; *see also*, *People v. Sullivan*, 231 Mich. App. 510, 518, 586 N.W.2d 578, 582 (1998).  Here, there was no evidence presented that petitioner acted under the heat of an adequate provocation.  There was some testimony that petitioner thought that someone was breaking into his home, but the only evidence at trial was that the victim and his wife were pounding on petitioner's door.  There was no evidence that anyone actually attempted to break into petitioner's home, nor any evidence that petitioner saw anyone attempting to do so once he came up from the basement and actually saw his door.[4]

Nor was there any evidence presented at trial that would have supported a finding of guilt on involuntary manslaughter.  Under Michigan law, "[i]nvoluntary manslaughter is the unintentional killing of another, without malice, during the commission of an unlawful act not amounting to a felony and not naturally tending to cause great bodily harm; or during the commission of some lawful act, negligently performed; or in the negligent omission to perform a legal duty."  *Mendoza*, 468 Mich. at 536, 664 N.W.2d at 690; *accord People v. Datema*, 448 Mich. 585, 595-96, 533 N.W.2d 272,

---

[4]Petitioner did not assert in the state courts, nor does he assert here, that he had a valid self-defense, imperfect self-defense, or defense of property defense.

276 (1995). As the court explained in *Datema*, "[t]his definition sets forth three different theories giving rise to involuntary manslaughter liability. These theories are not mutually exclusive, and, under the proper circumstances, multiple theories may be appropriate." *Id.* at 596, 533 N.W.2d at 276-77. Petitioner does not contend that his shooting of the victim was the result of the negligent performance of a lawful act or the negligent failure to perform a legal duty, and thus only the first theory of involuntary manslaughter liability is applicable here. In petitioner's case, however, this theory was not supported by the evidence. To support a conviction on this theory, the evidence had to show that the killing was both (a) "during the commission of an unlawful act not amounting to a felony," and (b) done by an act "not naturally tending to cause death or great bodily harm." Firing multiple shots through a door behind which petitioner knew someone to be standing is, as a matter of law, an act which naturally tends to cause death or great bodily harm. *See People v. Gover*, No. 203768, 1999 WL 33437846, at *2 (Mich. Ct. App. Aug. 17, 1999); *People v. Todd*, 186 Mich. App. 625, 631, 465 N.W.2d 380, 384 (1990) ("Defendant admitted that he repeatedly fired the shotgun from a moving car in the direction of the people in the front yard of the house. We believe that this was an unlawful act that naturally tended to cause death or great bodily harm. Therefore, an involuntary manslaughter instruction was inappropriate. This conclusion is not affected by defendant's claims that he did not aim at anyone and that he did not intend to kill anyone, or by one witness' ambiguous testimony that defendant may have been shooting high. It was the act of shooting the gun from a moving car toward a group of people which precluded an involuntary manslaughter instruction."), *vacated in part on other grounds sub nom. People v. Carter*, 190 Mich. App. 459, 476 N.W.2d 436 (1991), *in turn vacated by* 440 Mich. 870, 486 N.W.2d 740 (1992); *cf. People v. Beach*, 429 Mich. 450, 478, 418 N.W.2d 861, 874 (1988) ("Where the evidence suggests *only* that the criminal act naturally tends to cause death or great bodily harm, an instruction on the lesser included offense of

involuntary manslaughter is simply not justified."). Thus, petitioner was not entitled to a manslaughter instruction as a matter of state law.[5] Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his instructional error claims.[6]

G.    *Cumulative Error (Claim IV)*

Finally, petitioner contends that he was denied a fair trial by the cumulative effect of the errors at his trial. The Court should conclude that petitioner is not entitled to habeas relief on this basis. It is true that "[e]rrors which standing alone may be deemed harmless or insufficiently prejudicial to amount to a denial of due process may cumulatively produce a trial setting which is fundamentally unfair." *Payne v. Janasz*, 711 F.2d 1305, 1316 (6th Cir. 1983) (Jones, J., dissenting); *accord Walker*

---

[5]In addition to common law involuntary manslaughter explicated in *Mendoza* and *Datema* and discussed above, Michigan recognizes an offense of statutory involuntary manslaughter. Under the relevant statute, "[a] person who wounds, maims, or injures another person by discharging a firearm that is pointed or aimed intentionally but without malice at another person is guilty of manslaughter if the wounds, maiming, or injuries result in death." MICH. COMP. LAWS § 750.329(1). Petitioner presents his claim as one based on common law involuntary manslaughter, and he does not argue that he was entitled to an instruction on statutory involuntary manslaughter under § 750.329. In any event, petitioner would not have been entitled to such an instruction. As noted above, under Michigan law a trial judge may only instruct on necessarily lesser included offenses supported by the evidence, and may not instruct on cognate lesser included offenses. And in distinction to its holding in *Mendoza* that common law involuntary manslaughter is a necessarily included offense of murder, the Michigan Supreme Court has held that statutory involuntary manslaughter under § 750.329 is a cognate, rather than necessarily included, offense of murder. *People v. Smith*, 478 Mich. 64, 71-73, 731 N.W.2d 411, 415-16 (2007).

[6]At sentencing, the trial judge noted the unfortunate circumstances of the crime and told petitioner: "I don't believe you wanted to kill this man," and that "the Court is not inclined to sentence him to the high end of the guidelines, because I do believe that this was a mistake." Sentence Tr., at 19, 20. Petitioner contends that these statements indicate that the trial judge "would have returned a verdict of involuntary manslaughter in this case." Reply, at 4. The trial judge's comments, however, suggest no such thing. Viewed in context, the comments are directed at petitioner's mistake as to the identity of the victim and the tragic results in the case; they express no view on the legal issue of petitioner's liability for murder or involuntary manslaughter. And, in rejecting petitioner's motion for new trial, the same trial judge held that "none of the raised defenses supported a request for involuntary manslaughter as required under *People v. Cornell*." *People v. Huckaby*, No. 05-003213-01 (Wayne County, Mich., Cir. Ct. Oct. 13, 2006), at 3.

31

*v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983). This rule, however, applies only to constitutional errors; the accumulation of non-errors cannot collectively amount to a violation of due process. *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir. 1999); *McKinnon v. Ohio*, No. 94-4256, 1995 WL 570918, at \*12 (6th Cir. Sept. 27, 1995); *Fero v. Kerby*, 39 F.3d 1462, 1475 (10th Cir. 1994). As noted and discussed in this Report, none of petitioner's claims establish constitutional error, and thus his cumulative error claim fails.

H.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v.*

*Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." Fed. R. App. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. For the reasons explained above, it is not reasonably debatable that the trial court's factual findings, and in particular its credibility determination, are presumed correct here because they have not been rebutted by clear and convincing evidence. This being the case, the resolution of the bulk of petitioner's ineffective assistance claims is not reasonably debatable, because trial counsel's testimony at the state court evidentiary hearing rebuts these claims. Further, it is not reasonably debatable that petitioner's

alternative defense theories, even if they were not contrary to his expressed wishes, would not have provided an effective defense to the charges against him. Because there was absolutely no evidence that the victim's cocaine use contributed to his death, the resolution of petitioner's sufficiency of the evidence claim, as well as his intervening cause instruction and related ineffective assistance claims, is not reasonably debatable. Likewise, for the reasons explained above it is not reasonably debatable that petitioner's lesser offense instruction claims are not cognizable on habeas review, nor that petitioner was not entitled to such instructions as a matter of state law in light of the evidence at trial. Thus, the resolution of petitioner's lesser offense instruction and related ineffective assistance claims is not reasonably debatable. Finally, because none of petitioner's claims establish constitutional error, the resolution of petitioner's cumulative error claim is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

I.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of

objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:6/28/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on June 28, 2010.

s/Eddrey Butts
Case Manager