**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DEAMBRE TABRICE HUCKABY,

        Petitioner,                        CASE NO. 09-10030

v.

                                          HON. MARIANNE O. BATTANI

BLAINE C. LAFLER,

        Respondent.

_____/

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION AND DENYING PETITIONER'S
APPLICATION FOR THE WRIT OF HABEAS CORPUS
<u>AND DENYING CERTIFICATE OF APPEALABILITY</u>**

Petitioner Deambre Huckaby filed an Application for Writ of Habeas Corpus under 28 U.S.C. § 2254, alleging various claims arising out of his state court criminal trial. The Court referred this matter to Magistrate Judge Paul J. Komives for Report and Recommendation (R&R). On June 26, 2010, Magistrate Judge Komives issued his R&R, recommending that the Court deny Petitioner's application. Huckaby objects. For the reasons that follow, the Court **DENIES** the writ and the certificate of appealability.

**I. BACKGROUND**

A jury convicted Huckaby of second degree murder, MICH COMP. LAWS § 750.317, assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. He appealed as of right raising three claims, including the sufficiency

of the evidence, errors in the jury instructions, and ineffective assistance of counsel. The state court of appeals remanded the matter to the trial court for an evidentiary hearing on his ineffective assistance of counsel claim. After the hearing, Huckaby filed a supplemental pleading identifying three bases for his claim. First, Huckaby asserted that his counsel raised a defense that was untenable in light of the facts disclosed in discovery. Second, Huckaby claimed his counsel was ineffective because counsel prohibited Huckaby from exercising the right to testify in his own defense and for failing to make any record of a waiver of the right. Third, Huckaby argued that his counsel was ineffective for failing to discuss and/or ask for jury instructions on the lesser included offenses relative to the second degree murder charge–manslaughter or reckless discharge of a firearm.

At the conclusion of the evidentiary hearing, the state trial court held that Huckaby failed to meet the standard to show ineffective assistance of counsel. See Doc. No. 5, Ex. 7. The Michigan Court of Appeals affirmed the convictions. People v. Huckaby, No. 05-003213-01, 2007 WL 2377736 (Mich. Ct. App., Aug. 21, 2007). The Michigan Supreme Court denied leave to appeal. Doc. No. 2, Ex. A.

In his habeas petition, Huckaby raises the three issues raised on appeal in the state court as well as a claim that he was denied a fair trial by the cumulative effect of the errors at trial. In assessing the merits, the Magistrate Judge relied on the facts as recited by the Michigan Court of Appeals. See R&R at 4-5.

> Defendant's convictions arise from a shooting at his Detroit home on January 3, 2005. Complainant Cynthia Jessie testified that defendant is her cousin and the decedent is her husband. On the day of the incident, the decedent attempted to contact defendant by phone numerous times because

2

defendant owed the decedent money. At 11:45 p.m., the complainant and the decedent drove to defendant's house and the complainant repeatedly rang the doorbell and knocked on the door. The decedent was standing directly in front of the door and looking through a small window near the top of the door. The complainant heard four or five gunshots. The complainant "assume[ed]" defendant shot the decedent because the decedent indicated that defendant was coming to the door. The decedent was shot in the thigh and the complainant drove him to the hospital.

According to medical personnel, the decedent arrived at the hospital in hemorrhagic shock, unable to breathe on this own, without a pulse and with a "through and through" gunshot wound in his left thigh. After the decedent was resuscitated, his wound was surgically repaired and he was released from the hospital. Approximately three weeks later, the decedent died from blood clots in his lungs. The assistant Wayne County medical examiner testified that blood clots within the posterior tibia vein, which is a lower portion of the femoral vein injured by the gunshot wound, dislodged, traveled through the circulation and blocked the blood flow to both lungs. She further testified that the "cause of death was a gunshot wound to the left leg, complicated by a pulmonary embolus."

Both the decedent's daughter and son testified that they maintained close family relations with defendant. The decedent's daughter testified that after the incident, defendant apologized and said that he did not know that the decedent was the person knocking on his door. The decedent's son testified that defendant told him that he was in the basement with company and heard banging on the door. He "thought someone was breaking in, so he got his assault rifle and he shot through the door." Defendant gave the decedent's son money for the decedent's funeral.

At trial, the defense counsel asserted that defendant was not the shooter, that the shooting did not occur on defendant's front porch, and that the decedent's cocaine use caused the blood clots that caused his death. Defendant did not testify. Trial counsel read into evidence a written statement that the decedent made to a police officer on January 7, 2005, in which the decedent denied knowing defendant or who lived at the address where he was shot. The decedent claimed

> that he was told to meet a person at a house to retrieve money, but he was not sure if he was at the right house. In rebuttal, the decedent's son testified that the decedent knew defendant, that he was with the decedent and defendant on several occasions, that they all shared a house at one point, that he had been with the decedent at defendant's house, and that the decedent did not want the police to know that defendant was the shooter.

Huckaby, 2007 WL 2377736 at * 1-2 (footnote omitted).

## II. STANDARD OF REVIEW

A district court must conduct a *de novo* review of the parts of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge. Id. The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure." United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985). Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[] that the district judge would be the final arbiter" of a matter referred to a magistrate. Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

Objections to a report and recommendation are reviewed de novo. 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." Spencer v. Bouchard, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). " '[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing]

4

to specify the findings ... believed [to be] in error' are too general." Spencer, 449 F.3d at 725 (quoting Miller, 50 F.3d at 380).

## III. ANALYSIS

At the outset, the Court notes, that Huckaby lodged a general objection to the R&R. He "expressly objects to the contents of the Magistrate [Judge's] Report and Recommendation in its entirety, for all of the reasons cited in his original Petition and Reply brief. Doc. No. 10 at 1-2. He objects to "each and every finding of fact and conclusion of law," asserting they are "without legal or factual merit." Id. at 2. Because these objections do not meet the standard, the Court directs its attention to the specific arguments advanced by Huckaby. He contends that the Magistrate Judge erred in affording a presumption of correctness to the state court's factual findings.

### A. Presumption of Correctness

The Magistrate Judge applied the standards articulated in 28 U.S.C. § 2254, as amended by the Antiterrorist and Effective Death Penalty Act of 1996 ("AEDPA"), which governs federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has explained the phrase, "clearly established federal law,"

5

as referring to "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). The holdings of Supreme Court decisions, as opposed to the dicta, form the governing legal principles of a particular time. Williams v. Taylor, 529 U.S. 362, 412 (2000). Thus, a federal court conducting habeas review must look to relevant Supreme Court precedent at the time the state court rendered its decision. See Id.

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite of that reached by the Supreme Court on a question of law, or if the state court reaches a substantially different conclusion than the Court based upon a set of materially indistinguishable facts. Id. at 412-13.

An "unreasonable application" of clearly established federal law occurs "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal habeas court may not, however, find a state adjudication to be unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, a habeas petitioner must demonstrate that the state court's application of clearly established federal law to the facts of his case was objectively unreasonable. Price v. Vincent, 538 U.S. 634, 641 (2003).

Section 2254 also dictates that federal courts must presume the correctness of state court factual determinations upon habeas review:

> In a proceeding instituted by an application for a writ of habeas corpus by
> a person in custody pursuant to the judgment of a State court, a

> determination of a factual issue made by a State court shall be presumed
> to be correct. The applicant shall have the burden of rebutting the
> presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Bearing in mind these standards of review, the Court now considers the merits of Petitioner's objections.

### 1. Lesser Included offenses

Huckaby challenges the presumption of correctness the Magistrate Judge accorded to the state court's credibility findings, in particular, that the trial defense counsel advised Huckaby of possible lesser included offenses. According to Huckaby, the finding cannot be credited because there was no articulation of any factual basis supporting the conclusion.

Specifically, the trial defense counsel's testified that he had a "vivid memory" of discussing the lesser included offences with Huckaby. Huckaby attacks his trial counsel's credibility by mischaracterizing the testimony as having taken place in "lock-up." Because Huckaby was on bond the conversation could not have occurred in lock-up. In fact, counsel testified they spoke "in the back" of the courtroom, not in lock-up. Counsel also testified they had talked on more than one occasion.

Under § 2254(e)(1), the presumption of correctness must be rebutted by "clear and convincing evidence." This standard is not met. The trial strategy was to obtain a full and complete acquittal, which makes sense in light of Huckaby's prior criminal history. The defense strategy of erroneous identification constituted a legitimate means by which to gain an acquittal for Huckaby, whose desire for complete exoneration did not allow for lesser included offenses.

There are two elements to a successful ineffective assistance claim: 1) the attorney's performance must have been deficient, and 2) the deficient performance must have actually prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To be "deficient" for constitutional purposes, an attorney's performance must have fallen below "an objective standard of reasonableness." Id. at 688. Courts presume that the challenged conduct was reasonable because the universe of reasonable representation is extremely vast. Id. at 689. It is up to the petitioner to show that the attorney's conduct could not have been sound trial strategy, and to point out the specific instances of deficient conduct. Id. Even if the petitioner shows that his trial counsel's conduct was deficient, he must show that the deficiency actually prejudiced his case, meaning he must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

Having reviewed the record, the Court concludes that Petitioner has not established that trial counsel was deficient. Trial counsel reasonably determined that Petitioner's defense would be best served by not conceding guilt because it created the only strategy by which Petitioner would not have to serve prison time. Petitioner has not rebutted the presumption that counsel's conduct in this regard was sound trial strategy. The fact that counsel's strategy was unsuccessful does not mean that counsel was ineffective. See Moss v. Hofbauer, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

8

### B. Right to Testify

Next, Huckaby asks the Court to reject the state court's finding that defense counsel's testimony that Huckaby had elected not to testify at trial was credible. Counsel testified that he talked with his client about "wanting to testify and the one thing that he did not want to do, under any circumstances, was to testify in this case." Doc. No. 5, Ex. 7, p. 21. In contrast, Huckaby testified that he did not know that he had an absolute right to testify even if his attorney did not want him to do so. Huckaby also testified that he was led to believe he would testify, but his attorney never called him to the stand. Id., p. 65.

Again, Huckaby must advance clear and convincing evidence to overcome the presumption of correctness given to the state court's ruling. Again, the Court finds the standard is not met. There is no evidence that he disagreed with counsel's advice that he should not testify. Petitioner never alerted the state court of his intention to testify. His past involvement with the criminal justice system undermines his contention that he did not know that he had the right to testify. He simply cannot overcome the presumption that he willingly agreed to follow the advice of his counsel.

Nor was the advice deficient. Petitioner advanced a mistaken identification defense. If Petitioner had testified, he would have admitted that he discharged the gun, an admission that would have eviscerated his defense. Further, the testimony does not provide a foundation for an accident defense. See People v. Lovett, 283 N.W.2d 357, 359 (Mich. Ct. App. 1979) (holding that shooting the wrong person does not absolve the defendant of the crime because it "is only necessary that he intended "to cause great bodily harm to someone"). Huckaby fired the gun purposefully even if he was wrong

9

about who he was shooting. Therefore, Huckaby's claim that his attorney's advice fell below an objective standard of reasonableness fails. See Strickland, 466 U.S. at 688 (holding that in judging the reasonableness of counsel's performance, all circumstances surrounding the case must be considered).

### 3. Self-Defense

Lastly, Petitioner argues that his counsel was ineffective in not presenting Huckaby's mental state as a defense to the second-degree murder charge. Huckaby claims that he lacked the mental state necessary for murder when he fired the gun because he believed he was acting in self-defense to protect himself from the person pounding and shouting at the front door. According to Huckaby, he believed someone was coming after him following an incident of road rage, and the use of a weapon is permissible when defending oneself in his home.

The Court finds that this argument ignores the facts of this case. First, the decedent's wife testified that she and her husband pounded on the door and window and rang the doorbell. See Doc. No. 1, p. 8. Shots were fired after about ten or fifteen minutes of pounding. Id. This testimony was confirmed by trial counsel at the evidentiary hearing. Counsel testified that he understood that someone was knocking on the door; there were no facts that the decedent was breaking into the house. Doc. No. 5, Ex. 7 at 47-48. He asserted that to proceed with self-defense, Huckaby would have "had to feel reasonable apprehension of some danger. . .and knocking at a door" did not satisfy the standard. Id.

Consequently, counsel's decision that self-defense was inapplicable did not fall "outside the wide range of professionally competent assistance." See Strickland, 466

U.S. at 690. In sum, counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 690.

**IV. CONCLUSION**

The Court therefore **REJECTS** Petitioner's objection, **ADOPTS** the Report & Recommendation in its entirety, **DENIES** Petitioner's application for the writ of habeas corpus. Because this decision is adverse to the petitioner, the Court is obliged under Rule 11 of the Rules Governing Section 2254 Proceedings to "issue or deny a certificate of appealability."

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation omitted).

In this case, the Court concludes that reasonable jurists would not debate its conclusion that the petition does not present any claims upon which habeas relief may be granted. The trial court's factual findings, which are presumed correct, have not been rebutted by clear and convincing evidence. Therefore, the Court denies a certificate of appealability.

**IT IS SO ORDERED**.

                s/Marianne O. Battani
                MARIANNE O. BATTANI
                UNITED STATES DISTRICT JUDGE

DATED: December 9, 2010

## CERTIFICATE OF SERVICE

Copies of this Order were served upon Petitioner and counsel of record on this date by ordinary mail and/or electronic filing.

                s/Bernadette M. Thebolt
                CASE MANAGER